**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DEBBIE COURTNEY, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. CIV-12-0403-HE |
| ) | |
| STATE OF OKLAHOMA ex rel. ) | |
| The OKLAHOMA DEPARTMENT OF ) | |
| CORRECTIONS, an agency of the State ) | |
| of Oklahoma, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Debbie Courtney has sued her current employer, the Oklahoma Department of Corrections ("DOC"), asserting claims for race discrimination and retaliation under Title VII of the Civil Rights Act. Defendant has moved for summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (citation omitted).

The court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to plaintiff, the nonmoving party, and concludes that defendant's motion should be granted in part and denied in part.

Background

Plaintiff, a Caucasian female, works for defendant as a Level III Probation and Parole Officer ("PPO" or "PPO III"). Her duties include supervising individuals in Oklahoma who are on probation or parole. On August 22, 2010, plaintiff conducted a "home visit" of the residence of Crystal Murray, who, as it turned out, was no longer an offender under DOC supervision. After Ms. Murray's then-partner filed a complaint, Ryan Kinsey–an Internal Affairs Investigator–investigated the matter. Kinsey, a Caucasian male, concluded in his report that state statutes and/or policy and procedures "may have been violated," and that "[s]ufficient evidence was discovered to indicate that PPO III Debbie [Courtney]" was in violation of procedures involving the code of conduct for employees and search and seizure standards [Doc. #29-2 at 10-12].

On December 1, 2010, plaintiff filed a complaint of "workplace violence" against a co-worker, Karylen Hickerson, an African American female. Assistant District Supervisor Christopher Hudson, a Caucasian male, investigated plaintiff's complaint. District Supervisor Karen White, an African American female, stated in a memo dated December 27, 2010, and allegedly received by plaintiff on January 10, 2011, that upon review, she concluded the incident did not constitute an act of workplace violence. She indicated she based her decision on discussions with Hudson, Assistant District Supervisor Kristie Phillips (a Caucasian female), and several witnesses. Thereafter, plaintiff filed an internal grievance alleging discrimination and retaliation with respect to that finding.

On February 7, 2011, plaintiff was served with a notice of pre-termination regarding

the August home visit incident. She was terminated on March 7, 2011. Defendant contends that plaintiff was terminated for violations of DOC Search and Seizure policy, while plaintiff contends she was terminated in retaliation for her complaint of discrimination, and that she was discriminated against because of her race. Plaintiff appealed her termination to the Oklahoma Merit Protection Commission, and her discipline was reduced to a 10-day suspension without pay. While plaintiff's employment status was restored, that does not preclude the other relief which plaintiff seeks here.

<u>Analysis</u>

**A.     Plaintiff's Race Discrimination Claim**

Plaintiff claims that her termination was the product of race discrimination in violation of Title VII. Plaintiff relies on circumstantial evidence of discrimination, therefore the burden-shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973), applies. Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of race discrimination. *Id*. at 802. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id*. Finally, the burden shifts back to the plaintiff to produce evidence suggesting that the proffered reason is merely a pretext for discrimination. *Id*. at 804.

In order to establish a prima facie case for a typical Title VII claim, a plaintiff must show: "(1) [s]he was a member of a protected class; (2) [s]he was qualified and satisfactorily performing [her] job; and (3) [s]he was terminated under circumstances giving rise to an inference of discrimination." <u>Barlow v. C.R. England, Inc.</u>, 703 F.3d 497, 505 (10th Cir.

2012) (citation omitted).  However, the prima facie case in a reverse discrimination case requires a "stronger showing."  Argo v. Blue Cross & Blue Shield of Kansas, Inc., 452 F.3d 1193, 1201 (10th Cir. 2006).  This is because "the presumptions in [a] Title VII analysis that are valid when a plaintiff belongs to a disfavored group are not necessarily justified when the plaintiff is a member of an historically favored group."  Notari v. Denver Water Dep't, 971 F.2d 585, 589 (10th Cir. 1992) (citation omitted).  Therefore, a plaintiff seeking to prove reverse discrimination "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority."  Argo, 452 F.3d at 1201(quoting Notari, 971 F.2d at 589).

Alternatively, to establish the plaintiff's prima facie case, "a plaintiff may produce facts 'sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred.'"  *Id*. (quoting Notari, 971 F.2d at 590); *see also* Notari, 971 F.2d at 591 (noting that the "but for" alternative approach "does not displace the *McDonnell Douglas* paradigm but simply provides an alternative basis upon which plaintiffs may satisfy their prima facie burden").

Plaintiff appears to rely solely on the alternative formulation of the prima facie case. She has not presented evidence as to any background circumstances which would support an inference that defendant has taken the "unusual" step of discriminating against Caucasian employees.  Plaintiff contends that the decision to terminate her was made by two African American individuals, Karen White and Reginald Hines, who serves as Deputy Director of

the DOC.  Defendant, on the other hand, asserts that Kristie Phillips (a Caucasian individual) was also involved in the decision.  Even taking the evidence in the light most favorable to plaintiff and assuming only White and Hines were involved, or that Phillips was involved only in a ministerial role, the evidence is insufficient to establish the requisite background circumstances.  *See, e.g.*, Taken v. Okla. Corp. Comm'n, 934 F. Supp. 1294, 1298 (W.D. Okla. 1996), *aff'd*, 125 F.3d 1366 (10th Cir. 1997); Bowdish v. Fed. Express Corp., 699 F. Supp. 2d 1306, 1316 (W.D. Okla. 2010) ("It is insufficient, however, simply to show that the decision maker was a member of a minority group." (citing Notari, 971 F.2d at 589)).

As to the alternative approach, the Tenth Circuit emphasized that "the plaintiff must allege and produce evidence to support specific facts that are sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred."  Notari, 971 F.2d at 590.  While plaintiff's argument as to what evidence meets this standard is not altogether clear, as she appears to rely on the majority of this evidence as pretext and argues both discrimination and retaliation in the same breath [*see* Doc. #30 at 16], the court construes plaintiff's argument as relying on the following evidence to attempt to meet the alternative formulation: (i) the race of the decision makers who terminated plaintiff; (ii) preferential racial treatment and statements allegedly made by White in the past; (iii) the fact that other employees violated search and seizure policies, and other DOC policies, but were not terminated; and (iv) the decision that the incident with Hickerson did not constitute workplace violence.

Plaintiff points to the fact that the decision makers who terminated her were African

American. However, as discussed above, that fact is not sufficient to support the necessary inference that but for plaintiff's race, she would not have been terminated.[1]

Plaintiff also alleges that White has shown preferential racial treatment in the past. Plaintiff points to testimony by Officer Pursley that in 2006, White asked him and Chris Hudson to choose a new officer to join a team that supervises sex offenders. White allegedly chose an African American female for that position instead of the officer selected by Hudson and Pursley. Pursley testified that White told him "she wanted a person of color on every specialized caseload" [Doc. #30 at 21]. "While [i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions, a plaintiff can show such animus by 'demonstrat[ing] a nexus between the allegedly discriminatory statements and the defendant's decision to terminate [the plaintiff].'" Minshall v. McGraw Hill Broad. Co., Inc., 323 F.3d 1273, 1281 (10th Cir. 2003) (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1457 (10th Cir.1994)) (internal quotation marks omitted). This casual nexus can be shown "if the allegedly discriminatory comments were directed at the plaintiff, her position, or the defendant's policy which resulted in the adverse action taken against the plaintiff." Rea, 29 F.3d at 1457 (citations omitted). However, no such causal nexus exists here. Further, the act of hiring an African American female in that unrelated context is insufficient to support an inference that but for the fact that plaintiff is

---

[1] *The same applies to any allegation that the request for fitness for duty/medical examination indicates racial discrimination simply because the document was signed by White and Hines [See Doc. #30 at 18].*

Caucasian, she would not have been terminated in these circumstances.

Plaintiff also relies on the fact that no other DOC probation and parole officer has been terminated for violating search and seizure policy. Plaintiff points to three cases of PPOs that received letters of reprimand instead of termination. However, none of those officers were African American. Therefore, regardless of whether they were actually similarly situated within Tenth Circuit standards, the alleged disparity in treatment does not support an inference that defendant shows preferential treatment to African Americans or discriminates against Caucasians, much less an inference that had it not been for *plaintiff's* status, defendant would not have terminated her.

Plaintiff also points to evidence of other African American officers that were not terminated for violations of other policies. However, to raise an inference of disparate treatment, plaintiff must establish that she was similarly situated to these employees "in all relevant respects." McGowan v. City of Eufala, 472 F.3d 736, 745 (10th Cir. 2006) (citation omitted). "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Id.* (citation omitted). Further, the employees must have been disciplined for conduct of "comparable seriousness." *Id.*

Here, plaintiff points to two African American officers who were also PPO IIIs, and, therefore, presumably subject to the same standards governing performance evaluation and

discipline, yet received only letters of reprimand for their conduct.[2] KaShondra Young was apparently reprimanded in April of 2009 for willfully disobeying a direct order to cease working at another job. Renee Brown was apparently reprimanded in July of 2012 (nearly a year and half after plaintiff's termination) for violating policy regarding the Interstate Compact as to five offenders. The court concludes these do not satisfy the similarly situated standard because plaintiff has not offered evidence suggesting that these were violations of comparable seriousness, except to simply assert that a reasonable jury could reach such a conclusion. Further, "a court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees," facts that are completely missing from plaintiff's response. *Id*. Without more, the court cannot conclude that these employees were "similarly situated," and, therefore, there is no disputed issue of material fact as to disparate treatment between employees sufficient to raise the requisite reverse discrimination inference for plaintiff. *See id.* at 746 (holding that even if two employees were similarly situated, because the plaintiff's conduct was not "sufficiently similar" to the other employee, it could not raise an inference of pretext on the basis of their disparate treatment).

Finally, plaintiff points to the result of her workplace violence complaint, in which her employer determined that no workplace violence was involved in the dispute with her African American co-worker. However, simply reaching such a conclusion when the other

---

[2]*Plaintiff also relies on the reprimand of an officer named Shirley Mayhue, but fails to address whether she was subject to the same standards as plaintiff or what position she held.*

party involved was an African American is insufficient to indicate there was some racial motivation involved, either in that decision or in plaintiff's termination. The undisputed facts indicate that Chris Hudson, a Caucasian male, conducted the investigation into the workplace violence incident, and that White's decision was based upon discussions with Hudson, Kristie Phillips (also Caucasian), and several witnesses. Further, both plaintiff and Hickerson received informal counseling for unprofessional conduct as a result of the incident.

The court concludes that plaintiff cannot make the "strong showing" required in reverse discrimination suits. She has simply not "allege[d] and produce[d] evidence to support specific facts that are sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." *See* Notari, 971 F.2d at 590. Defendant is entitled to summary judgment on plaintiff's race discrimination claim.

**B.     Plaintiff's Retaliation Claim**

Plaintiff also asserts a Title VII retaliation claim. "Title VII forbids retaliation against an employee because she has 'opposed' any practice made unlawful by Title VII." Stover v. Martinez, 382 F.3d 1064, 1070 (10th Cir. 2004) (quoting 42 U.S.C. § 2000e-3(a)). Again, in the absence of direct evidence, the claim is analyzed under the McDonnell Douglas burden-shifting framework. Under that framework, a plaintiff asserting a retaliation claim must make a prima facie showing "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." Tabor, 703 F.3d at 1219 (citation omitted).

The parties seem to agree that plaintiff engaged in protected opposition sufficient to satisfy the first element, though they appear to have different views as to what the protected opposition was. Plaintiff seems to argue that her initial complaint of workplace violence was the protected conduct. However, Title VII protects only against actions based on the particular grounds referenced in the statute (race, sex, etc.) and plaintiff provides no authority for the proposition that a complaint about workplace violence, by itself, qualifies. Defendant appears to assume that plaintiff's protected opposition was her internal grievance of discrimination and retaliation directed to the finding by White that the 12/1/10 incident did not constitute workplace violence, as defendant's statement of undisputed facts incorporates plaintiff's complaint which alleged that plaintiff made the grievance and did so on the basis it was motivated by racial discrimination. As this grievance asserted by plaintiff was based on claimed race discrimination, a ground addressed by Title VII, it appears to be the appropriate focus for present purposes. In any event, defendant does not appear to challenge that protected conduct was involved here.

Plaintiff's termination of employment plainly satisfies the second element.

Defendant argues the third element of a prima facie case — evidence of a causal connection between the protected activity and termination — is not present here. However, considering the evidence in the light most favorable to plaintiff, the court concludes a sufficient showing as to this element has been made. Less than a month passed between her internal grievance and receipt of her pre-termination notice. Conroy v. Vilsack, 707 F.3d 1163, 1181 (10th Cir. 2013) ("It appears clear that, if the adverse action occurs in a brief

10

period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference . . . .").

The court concludes plaintiff made the necessary showing as to a prima facie case.

Defendant articulated a legitimate, non-retaliatory reason for plaintiff's termination, based on plaintiff's violation of DOC search and seizure policies, so the burden shifts to plaintiff to present evidence of pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-[retaliatory] reasons." Vaughn v. Epworth Villa, 537 F.3d 1147, 1153 (10th Cir. 2008) (quoting Rivera v. City & Cnty. of Denver, 365 F.3d 912, 925 (10th Cir. 2004)).  While plaintiff's evidence in this regard is thin, the court concludes plaintiff has offered sufficient evidence of pretext to survive summary judgment as to the retaliation claim.  The evidence regarding the timing of the internal investigation into plaintiff's home visit–including the fact that the investigation was completed and findings reported in December, but that defendant did not act on those findings until after plaintiff made the complaint of discrimination in early January–is sufficient to support a permissible inference that defendant did not act for the asserted non-retaliatory reason.  Summary judgment will be denied as to the retaliation claim.

## Conclusion

Defendant's motion for summary judgment [Doc. #29] is **GRANTED** as to plaintiff's reverse race discrimination claim and **DENIED** as to the retaliation claim.

In light of plaintiff's continued employment by defendant,[3] the limited amounts likely at issue here, and all surrounding circumstances, the court concludes a further settlement conference should be held in this matter. The parties are directed to contact the chambers of U. S. Magistrate Judge Shon T. Erwin immediately to arrange the required conference at a time designated by Judge Erwin. As this case is set on the court's May trial docket, the conference should occur as soon as possible consistent with Judge Erwin's availability.

**IT IS SO ORDERED**.

Dated this 2nd day of May, 2013.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[3] As noted above, plaintiff was reinstated after state administrative proceedings.